# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

GARY CRAIG ROSALES,

   *Petitioner,*

vs.

Q. BYRNE, *et al.*,

   *Respondents.*

3:16-cv-00003-RCJ-WGC

ORDER

This represented habeas matter under 28 U.S.C. § 2254 comes before the Court on petitioner's motion for a stay (ECF No. 38) and his motion for leave to file a supplemental exhibit in support of the motion for a stay (ECF No. 45).

### *Background*

Petitioner Gary Rosales challenges his Nevada state conviction, pursuant to a jury verdict, of seven counts of discharging a firearm at or into an occupied structure, one count of aggravated stalking, and one count of attempted murder with the use of a deadly weapon.

On respondents' earlier motion to dismiss, the Court held that Grounds 1 through 4 were unexhausted.

In Ground 1, petitioner alleges that the judge presiding at his trial and sentencing had an intolerable probability of actual bias in violation of his rights to a fair trial and due process in violation of the Sixth and Fourteenth Amendments because the judge had been endorsed in a recent election by the district attorney, who was the victim on the aggravated stalking charge. (ECF No. 15, at 18-21. *See also* ECF No. 16-19, at 5-6.)

1

In Ground 2, Rosales alleges that he was denied effective assistance of counsel when trial counsel failed to move to recuse the trial judge based on the bias claim alleged in Ground 1 and when appellate counsel failed to raise the bias issue on appeal. (ECF No. 15, at 21-23.)

In Ground 3, petitioner alleges that he was denied effective assistance of counsel when: (a) defense counsel failed to file a petition for a writ of mandamus in the state supreme court after the trial court denied a motion to disqualify the special prosecutor on the basis that: (i) the special prosecutor had been employed with the district attorney's office during the time of the aggravated stalking of the district attorney and had retired from that office only months before taking over the prosecution; and (ii) he worked out of and used the resources of the district attorney's office when prosecuting the case; and (b) appellate counsel thereafter (i) failed to pursue the foregoing disqualification issue on direct appeal; and (ii) failed to oppose the district attorney's motion for reconsideration after appellate counsel initially successfully secured an order disqualifying the district attorney from appearing on the direct appeal. (ECF No. 15, at 23-30.)

In Ground 4, petitioner alleges that he was denied effective assistance of counsel when trial counsel failed to file a motion for change of venue based upon pretrial publicity. (ECF No. 15, at 31-34.)

Rosales now moves to stay the federal action so that he can exhaust the claims in state court. He is filed a state court petition seeking to exhaust the claims. A motion to dismiss by the State has been briefed and is pending for decision before the state district court in No. CR05-0914 in that court.[1]

### *Governing Law*

To obtain a stay under *Rhines v. Weber*, 544 U.S. 269 (2005), a petitioner must demonstrate that he had good cause for his failure to exhaust the unexhausted claims previously, that at least one claim potentially is meritorious, and that he has not engaged

---

[1] In addition to the papers on file, the Court takes judicial notice of the online docket records of the state district court. *E.g., Harris v. County of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012).

in intentionally dilatory litigation tactics. 544 U.S. at 278; *Dixon v. Baker*, 847 F.3d 714, 722 (9th Cir. 2017).

On the first requirement, the case law has not delineated the precise contours of what constitutes "good cause" in any great detail to date. *Dixon*, 847 F.3d at 720. A substantial amount of flexibility likely always will inhere in the requirement, given that "[t]he good cause element is the equitable component of the *Rhines* test." *Blake v. Baker*, 745 F.3d 977, 982 (9th Cir. 2014).

In *Blake*, the Ninth Circuit held that a showing of good cause under *Rhines* for a failure to exhaust a claim of ineffective assistance of trial counsel, based on alleged ineffective assistance of postconviction counsel, cannot be more demanding than a showing of cause to overcome a procedural default of the ineffective-assistance claim under *Martinez v. Ryan*, 566 U.S. 1 (2012). *Blake*, 745 F.3d at 982-84. In this regard, a petitioner must present more than "a bare allegation of state postconviction" ineffective assistance and instead must present "a concrete and reasonable excuse, supported by evidence that his state postconviction counsel" was ineffective. *See* 745 F.3d at 983. A petitioner with an unexhausted claim of ineffective assistance of trial counsel "has a path to a stay under *Rhines* if he alleges a plausible claim that his post-conviction counsel was ineffective." *Dixon*, 847 F.3d at 722.[2]

On the second *Rhines* requirement, a claim is plainly meritless in this context only when it is perfectly clear that the petitioner does not raise even a colorable federal claim

---

[2] The practical import of the Ninth Circuit's holding in *Blake* was limited by the holding by the Supreme Court of Nevada five months later in *Brown v. McDaniel*, 130 Nev. 565, 331 P.3d 867 (2014). In *Brown*, the state high court held that the rule in *Martinez* does not provide a basis for overcoming state procedural bars under Nevada law. Accordingly, when the federal district court is presented with an effort to overcome a potential procedural default of – only – a claim of ineffective assistance of trial counsel based – solely – on the rule in *Martinez*, there would appear to be no point in granting a stay for a petitioner to return to Nevada state court. Such an exercise would be pointless because, under *Brown*, the Nevada state courts will not recognize *Martinez* as a basis for overcoming state procedural bars. In such a circumstance, the Court has found the claim technically exhausted by procedural default and often will defer a determination of whether the petitioner can overcome the procedural default under *Martinez* until after the filing of an answer and reply addressing the issue on a full record and argument. *See, e.g., Rodriguez v. Filson*, 2017 WL 6782466, at *4-*6, No. 3:15-cv-00339-MMD-WGC, ECF No. 33, at 7-11 (D. Nev., Dec. 29, 2017); *Myers v. Filson*, 2017 WL 5559954, at *2–*4, No. 3:14–cv–00082–MMD–VPC, ECF No. 57, at 4–8 (D. Nev., Nov. 17, 2017).

and thus has no hope of prevailing. *See Rhines*, 544 U.S. at 277; *Dixon*, 847 F.3d at 722; *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005). Respondents concede that all four unexhausted grounds clear this low threshold. (ECF No. 41, at 3.)

On the third requirement, respondents also concede that petitioner has not engaged in intentionally dilatory litigation tactics. (*Id.*) While it perhaps is not inconceivable that a noncapital habeas petitioner might engage in intentionally dilatory tactics, the relevance of this factor, as a practical matter, largely is restricted to capital cases.[3]

## *Discussion*

The Court, ultimately, is persuaded that petitioner has demonstrated good cause in this particular case given the interrelationship between Grounds 1 and 2.

Rosales presents three arguments seeking to establish good cause regarding Ground 1. First, he urges that he can demonstrate cause for the failure to exhaust the ground earlier under the rule in *Martinez* due to alleged ineffective assistance of postconviction counsel. Second, he contends that he has good cause for the failure to exhaust Ground 1 (as well as Ground 2) because the trial court and district attorney allegedly withheld information and failed to disclose to the defense that the district attorney had endorsed the presiding judge in the recent election. Third, as discussed further below, he seeks to establish good cause based upon the interrelationship between the substantive claim in Ground 1 and an ineffective-assistance claim in Ground 2.

On the first argument, Rosales suggests that the Court "expressed skepticism" in its prior order as to whether *Martinez* applied to Ground 1. (ECF No. 38, at 8.) The Court was not merely skeptical; it affirmatively held that "*Martinez* does not apply to such a claim." (ECF No. 37, at 7.) That is the law. As the Supreme Court has stated, "[a]pplying

---

[3] *Cf. Lawrence v. Florida*, 549 U.S. 327, 344 & n.9 (2007) (Ginsburg, J., dissenting) ("Most prisoners want to be released from custody as soon as possible, not to prolong their incarceration. They are therefore interested in the expeditious resolution of their claims. Though capital petitioners may be aided by delay, they are a small minority of all petitioners."); *Valdovinos v. McGrath*, 598 F.3d 568, 574 (9th Cir.2010), *vacated for reconsideration on other grounds*, 562 U.S. 1196 (2011) (petitioner "had not engaged in dilatory tactics and he had no motivation for delay, as he is not a capital defendant").

4

*Martinez*'s highly circumscribed, equitable exception to new categories of procedurally defaulted claims would . . . do precisely what this Court disclaimed in *Martinez*: Replace the rule of *Coleman* [*v. Thompson*, 501 U.S. 722 (1991)] with the exception of *Martinez*." *Davila v. Davis*, 137 S.Ct. 2058, 2066 (2017). *Martinez* cannot directly provide a basis for cause to overcome any procedural default of Ground 1, or by extension under *Blake*, for good cause under *Rhines* for a failure to exhaust Ground 1.[4]

On the second argument, respondents do not contend that the inherent public nature of the endorsement, standing alone, precludes a finding that the trial judge and district attorney withheld and failed to disclose information regarding the endorsement specifically to the defense. Respondents instead seek to defeat the second argument based upon when Rosales actually learned about the endorsement on the internet. However, respondents posit that Rosales learned of the endorsement only "sometime after he was released on bail in July 2009 [eight months before the February 2010 trial] and before sentencing [in March 2010]." (ECF No 41, at 4.) To the extent that Rosales' actual factual knowledge of the endorsement is a material point, the current record does not necessarily establish that he learned of the endorsement at a time when he seasonably could have sought disqualification at the very least prior to the trial.

In all events, given its disposition on petitioner's third argument discussed below, the Court will pretermit further consideration of whether Rosales can establish good cause for failure to exhaust Ground 1, in whole or in part, based upon his second argument. The Court makes no holding in that regard. Moreover, the Court makes no implied holding as to whether Rosales can or cannot overcome state procedural bars based upon his argument that the trial court and district attorney withheld information regarding the

---

[4] Moreover, as alluded to in note 2, *supra*, it would be pointless to stay the federal case for Rosales to pursue a *Martinez* argument as to Ground 1 in Nevada state court because the state courts do not recognize *Martinez* as a basis for overcoming state procedural bars even as to claims of ineffective assistance of trial counsel. The state supreme court's holding to that latter effect in *Brown* substantially limits the viability of a *Martinez*-based argument as a direct basis for a stay under the Ninth Circuit's earlier holding in *Blake*. If a petitioner's only claimed basis for overcoming a procedural default of a claim is *Martinez*, then the next logical step is adjudication of the *Martinez* issue in federal court, not entry of a stay to pursue a *Martinez* argument that plainly is foreclosed by governing state supreme court authority.

5

endorsement. That is an inquiry for the Nevada state courts in the currently pending state proceedings.

Petitioner's third good-cause argument is premised upon the interrelationship between the substantive claim in Ground 1 and the claim of ineffective assistance of trial counsel in Ground 2. Alleged ineffective assistance of trial counsel in failing to seek to disqualify the trial and sentencing judge can be relied upon as cause in an effort to overcome the procedural default of the underlying substantive claim. *E.g., Murray v. Carrier*, 477 U.S. 479, 488-89 (1986). For the ineffective-assistance claim to potentially serve as cause, however, that claim itself must be both exhausted and not procedurally defaulted. *See, e.g., id.*; *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003).

In the present case, if the Court *arguendo* otherwise was inclined to deny a stay based on his other arguments, Rosales could be required to dismiss the unexhausted claims that are not subject to *Martinez*, such as Ground 1, or face a full dismissal. If the claims were dismissed, the Court then would proceed on to a determination of, *inter alia*, whether Rosales can overcome a procedural default of the trial ineffective-assistance claim in Ground 2 under *Martinez*. If the Court ultimately concluded that Rosales could overcome a procedural default of that claim under *Martinez*, the claim then would be potentially available to establish cause and prejudice to overcome any procedural default of Ground 1. However, under the scenario just outlined, Ground 1 no longer would be before the Court. In this situation, subject to the points noted below, the more prudent, pragmatic and equitable course would appear to be to grant a stay. With a stay, Ground 1 will not be dismissed in what ultimately may prove to be a premature dismissal from the case before the Court makes a determination under *Martinez* as to Ground 2.

The Court notes in this regard that – at least on the arguments presented on the motion to stay – Rosales presents an at least debatable basis for overcoming state procedural bars as to Ground 1 premised upon the trial court and district attorney allegedly withholding information regarding the endorsement from the defense. This Court has not held that Rosales can, or cannot, demonstrate good cause under *Rhines*

6

for the failure to exhaust on this basis. However, the present briefing does not necessarily establish that Rosales' argument has no chance of succeeding as a matter of law under Nevada state law pertaining to the state procedural bars.

The Court further notes that – but for the fact that the Nevada state courts do not recognize *Martinez* as a basis for overcoming state procedural bars – a stay otherwise would be warranted under *Blake* as to the Ground 2 trial ineffective-assistance claim standing alone. That is, Rosales has presented an at least plausible claim supported by evidence that his state postconviction counsel was ineffective in failing to raise the claim.

The Supreme Court's decision nine months prior to Rosales' trial in *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868 (2009), provided a potential legal foundation for both Grounds 1 and 2. *Caperton* departed from prior Supreme Court caselaw that would find a due process violation based upon alleged judicial bias only when the judge had a direct, personal, substantial and/or pecuniary interest in the outcome. Chief Justice Roberts' dissent in *Caperton* criticized the majority opinion as stating a new bias rule that "fail[ed] to provide clear, workable guidance for future cases." 556 U.S. at 893. He listed forty questions raised by the decision that he stated represented "only a few uncertainties that quickly come to mind." 556 U.S. at 893-98. The questions included the following:

> 20. Does a debt of gratitude for endorsements by newspapers, interest groups, politicians, or celebrities also give rise to a constitutionally unacceptable probability of bias? How would we measure whether such support is disproportionate?

556 U.S. at 895.

Given the questions as to the potential reach of *Caperton* posed by Chief Justice Roberts' dissent, neither Ground 1 nor the trial ineffective-assistance claim in Ground 2 necessarily were subject to dismissal on their face on the facts presented in Rosales' case. Prior Nevada state caselaw had held that an endorsement of a judge did not provide a basis for recusal. *See, e.g., State, Department of Transportation v. Barsy*, 113 Nev. 709, 941 P.2d 969 (1997), *overruled on other grounds*, *GES, Inc. v. Corbitt*, 117 Nev. 265, 268 n.6, 23 P.3d 11, 13 n.6 (2001). However, that caselaw had been premised

at least in part upon the due process rule stated in the prior Supreme Court precedent from which *Caperton* departed. *See* 113 Nev. at 711, 941 P.2d at 970.[5]

Rosales accordingly presents a sufficiently plausible claim of ineffective assistance of postconviction counsel for failure to raise the claim in Ground 2 that a stay would have been warranted under *Blake* if the state courts recognized *Martinez* as a basis for overcoming state procedural bars.[6] Given the scenario described previously and the divergence between federal and Nevada state law with respect to *Martinez*, the order that most accords with the principles of comity and federalism that underlie the exhaustion and procedural default doctrines is a stay of this matter until the interrelated substantive claim in Ground 1 is exhausted in the ongoing state court proceedings. The Court finds that Rosales therefore has demonstrated good cause on the record presented.

In staying this matter, the Court makes no broad holding applicable to other cases, as the good-cause requirement is a flexible equitable standard turning upon the specific facts of each case. *See, e.g., Blake, supra*. The Court further makes no implied holding as to whether Rosales can overcome a procedural default of the claim in Ground 2 under *Martinez* and/or as to the merits of that ground. The Court makes only a preliminary procedural determination that a stay is warranted.[7] Nor does the Court make any

---

[5] On the current record and argument, the Court is not persuaded by respondents' suggestion that trial counsel necessarily would have been aware or reasonably should have been aware of the potential basis for disqualification only once he was informed of the endorsement by Rosales himself. (*See* ECF No. 41, at 4.) On a preliminary procedural question as to whether to stay the action, the Court is not going to definitively resolve potentially competing factual inferences on the underlying ineffective-assistance claim to determine whether petitioner presents a plausible claim of ineffective assistance of post-conviction counsel in failing to raise the ineffective-assistance claim.

[6] The Court is not persuaded, on the current record and argument, by respondents' suggestion that the fact that state post-conviction counsel raised other claims *ipso facto* leads to a conclusion that she was not ineffective in raising the trial ineffective-assistance claim in Ground 2. (*See* ECF No. 41, at 5-6.) Nor is the Court persuaded by respondents' suggestion that it is in some sense material that Rosales was not "prohibited" from raising the claim in Ground 2 in either his *pro se* original state petition or the counseled supplement. (*See id.*, at 6-7.) Particularly given *Martinez*, that argument simply begs the question.

[7] In this vein, the Court declines petitioner's request for an evidentiary hearing at this juncture. The preliminary showing required under *Rhines* "should . . . not be any *more* demanding than the standard for excusing a procedural default." *Dixon*, 847 F.3d at 722 (emphasis added). The showing thus need not necessarily be *as* demanding initially as any full evidentiary showing that ultimately might be required to overcome a procedural default. It would be the rare case indeed where a federal court would have occasion to hold an evidentiary hearing to resolve the preliminary procedural question of whether to enter a stay.

8

determination with regard to Grounds 3 and 4. The Court's inquiry need extend only to whether a stay should be entered. It otherwise does not conduct further claim-by-claim assessment as to whether the *Rhines* criteria are satisfied also as to other claims once it determines that a stay is warranted as to at least one ground.[8]

The motion for a stay therefore will be granted.

IT THEREFORE IS ORDERED that petitioner's motion for a stay (ECF No. 38) is GRANTED and that this action is STAYED pending the completion of the currently pending state court proceedings, conditioned upon petitioner filing a motion to reopen within forty-five (45) days of issuance of the remittitur at the conclusion of all state court proceedings.[9] Any party otherwise may move to reopen the matter at any time and seek any relief appropriate under the circumstances.

IT FURTHER IS ORDERED that, with any motion to reopen filed following the completion of all state court proceedings pursued, petitioner: (a) shall attach an indexed chronological set of exhibits containing the state court record materials relevant to the issues herein that cover the period between the state court record exhibits on file in this matter and the motion; and (b) if petitioner then intends to further amend the petition, shall file a motion for leave to amend along with the proposed verified amended petition or a motion for extension of time to move for leave. Respondents shall have thirty (30) days to file a response to the motion(s) filed. The reopened matter will proceed under the current docket number. No claims have been dismissed in conjunction with the stay.

IT FURTHER IS ORDERED that petitioner's unopposed motion for leave to file a supplemental exhibit in support of the motion for a stay (ECF No. 45) is GRANTED.

No further hard copies of exhibits electronically filed in the record need be nor shall be submitted in this action.

---

[8] *Accord Wright v. LeGrand*, 2014 WL 3428487, at *13, No. 3:12-cv-00286-MMD-VPC, ECF No. 55, at 23 (D. Nev., July 10, 2014); *Nika v. McDaniel*, 2010 WL 3463584, at *2-*3, No. 3:09-cv-00178-JCM-WGC, ECF No. 47, at 4 (D. Nev., Aug. 27, 2010).

[9] If *certiorari* review will be sought or thereafter is being sought, either party may move to reinstate the stay for the duration of any such proceedings. *Cf. Lawrence v. Florida*, 549 U.S. 327, 335 (2007).

The Clerk of Court accordingly shall ADMINISTRATIVELY CLOSE this action until the Court grants a motion to reopen the matter.

DATED: This 11th day of March, 2019.

_____
ROBERT C. JONES
United States District Judge