1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**DISTRICT OF NEVADA**

10

11 GARY CRAIG ROSALES,                          Case No. 3:16-cv-00003-RCJ-CSD

12                      Petitioner,            **ORDER**

13          v.

14 DWIGHT NEVEN, et al.,

15                      Respondents.

16

17 **I.       Introduction**

18          This is a habeas corpus action under 28 U.S.C. § 2254.  Currently before the court are

19 respondents' motion to dismiss (ECF No. 60) and petitioner's motion for leave to conduct

20 discovery (ECF No. 64).  The court grants respondents' motion to dismiss in part, finding that

21 grounds 1 through 4 of the second amended petition (ECF No. 54) are procedurally defaulted and

22 that petitioner has not demonstrated cause and prejudice to overcome the defaults.  The court

23 denies petitioner's motion for leave to conduct discovery because the motion is relevant only to

24 the now-dismissed grounds 1 and 2.

25          Also before the court is petitioner's unopposed motion for extension of time.  ECF No. 72.

26 The court grants this motion.

27

28

1

1    **II.     Background**

2           The parties are familiar with the procedural history of this case, and the court recites only

3    what is necessary for this order.  Petitioner Gary Rosales filed a counseled first amended petition.

4    ECF No. 15.  He noted that he had not presented the claims in grounds 1 through 4 to the Nevada

5    state courts.  The court granted in part respondents' first motion to dismiss, finding that grounds 1

6    through 4 were not exhausted.  ECF No. 37.  See also 28 U.S.C. § 2254(b).  The court then

7    granted Rosales' motion for a stay of this action while he pursued his state-court habeas corpus

8    remedies for the unexhausted grounds.  ECF No. 47.  Those state-court proceedings concluded

9    with the Nevada Court of Appeals determining that all four grounds were untimely, successive,

10   and abusive of the writ.  Ex. 175 (ECF No. 51-12) (citing Nev. Rev. Stat. §§ 34.726(1),

11   34.810(1)(b)(2), 34.810(2)).  Rosales returned to this court with a counseled second amended

12   petition.  ECF No. 54.  Respondents responded with their second motion to dismiss.  ECF No. 60.

13   **III.    Legal Standard**

14          A federal court will not review a claim for habeas corpus relief if the decision of the state

15   court regarding that claim rested on a state-law ground that is independent of the federal question

16   and adequate to support the judgment.  Coleman v. Thompson, 501 U.S. 722, 730-31 (1991).

17          In all cases in which a state prisoner has defaulted his federal claims in state court
             pursuant to an independent and adequate state procedural rule, federal habeas
18           review of the claims is barred unless the prisoner can demonstrate cause for the
             default and actual prejudice as a result of the alleged violation of federal law, or
19           demonstrate that failure to consider the claims will result in a fundamental
             miscarriage of justice.
20

21   Id. at 750; see also Murray v. Carrier, 477 U.S. 478, 485 (1986).  The grounds for dismissal upon

22   which the Nevada Supreme Court relied in this case are adequate and independent state rules.

23   Vang v. Nevada, 329 F.3d 1069, 1074 (9th Cir. 2003) (Nev. Rev. Stat. § 34.810); Loveland v.

24   Hatcher, 231 F.3d 640 (9th Cir. 2000) (Nev. Rev. Stat. § 34.726); Moran v. McDaniel, 80 F.3d

25   1261 (9th Cir. 1996) (same).

26          To demonstrate cause for a procedural default, the petitioner must "show that some

27   objective factor external to the defense impeded" his efforts to comply with the state procedural

28   rule.  Carrier, 477 U.S. at 488.

2

1         To show prejudice, "[t]he habeas petitioner must show 'not merely that the errors at . . .

2   trial created a <u>possibility</u> of prejudice, but that they worked to his actual and substantial

3   disadvantage, infecting his entire trial with error of constitutional dimensions.'" <u>Carrier</u>, 477 U.S.

4   at 494 (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)) (emphasis in original).

5         An argument for cause and prejudice to excuse a procedural default must not itself be

6   procedurally defaulted. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 453 (2000).

7         In Nevada, generally a person must raise claims of ineffective assistance of trial counsel

8   for the first time in a post-conviction habeas corpus petition. <u>Gibbons v. State</u>, 634 P.2d 1214

9   (Nev. 1981). In that circumstance, the ineffective assistance of initial state post-conviction

10   counsel may be cause to excuse the procedural default of a claim of ineffective assistance of trial

11   counsel. <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012). The petitioner must demonstrate:

12       (1) post-conviction counsel performed deficiently; (2) there was a reasonable
   probability that, absent the deficient performance, the result of the post-conviction
13   proceedings would have been different; and (3) the underlying ineffective
   assistance of trial counsel claim is a substantial one, which is to say that the
14   prisoner must demonstrate that the claim has some merit.

15   <u>Ramirez v. Ryan</u>, 937 F.3d 1230, 1242 (9th Cir. 2019) (citations and quotations omitted).

16   **IV.   Discussion**

17         **A.   Grounds 1 and 2**

18         Grounds 1 and 2 of the second amended petition are related. In ground 1, Rosales claims

19   that the judge presiding over his trial, Patrick Flanagan, had an intolerable probability of actual

20   bias. Richard Gammick, the Washoe County District Attorney and alleged to be the victim of one

21   of the charged offenses, had endorsed Judge Flanagan in the 2006 general election.[1] Ground 2

22   contains two claims of ineffective assistance of counsel. For ease of reference, the court breaks

23   ground 2 into two parts. In ground 2[a], Rosales claims that trial counsel provided ineffective

24   assistance by failing to request the recusal of Judge Flanagan. In ground 2[b], Rosales claims that

25   appellate counsel provided ineffective assistance by not raising the probability of Judge

26   Flanagan's bias on direct appeal.

27

28     [1] The Washoe County District Attorney's Office did not prosecute Rosales. A special prosecutor did.

1         Ground 1 is procedurally defaulted.  Rosales argues that the ineffective assistance of

2   either trial counsel or appellate counsel can excuse the procedural default of ground 1.  Those

3   ineffective assistance claims, grounds 2[a] and 2[b], themselves are procedurally defaulted.

4   Rosales argues that the ineffective assistance of post-conviction counsel can excuse the

5   procedural defaults of grounds 2[a] and 2[b].

6         The court thus turns first to whether Rosales can demonstrate cause and prejudice to

7   excuse the procedural defaults of ground 2[a] or ground 2[b].  If he can demonstrate cause and

8   prejudice to excuse the procedural default of one of those claims, then the court will determine

9   whether the ineffective-assistance claims in ground 2[a] or ground 2[b] can excuse the procedural

10  default of ground 1.

11               **1.**        **The court dismisses ground 2[b]**

12        Ground 2[b] is the claim that appellate counsel provided ineffective assistance by not

13  raising the probability of Judge Flanagan's bias on direct appeal.  Rosales' only argument for

14  cause and prejudice is <u>Martinez</u>, that post-conviction counsel provided ineffective assistance by

15  not raising the claim in his initial state post-conviction habeas corpus petition.  However,

16  <u>Martinez</u> does not apply to procedurally defaulted claims of ineffective assistance of appellate

17  counsel.  <u>Davila v. Davis</u>, 137 S. Ct. 2058 (2017).  Rosales recognizes this and wishes to keep the

18  issue preserved for further review.  ECF No. 63 at 5 n.1.  The court dismisses ground 2[b].

19               **2.**        **The court dismisses ground 2[a]**

20        Ground 2[a] is the claim that trial counsel provided ineffective assistance by not seeking

21  Judge Flanagan's recusal because of a probability of actual bias.  Again, Rosales' only argument

22  for cause and prejudice is <u>Martinez</u>, that post-conviction counsel provided ineffective assistance

23  by not raising the claim in his initial state post-conviction habeas corpus petition.  <u>Martinez</u> can

24  apply to ground 2[a].  However, the court finds that the underlying claim is insubstantial, and thus

25  Rosales has not demonstrated cause and prejudice.

26        The court first disposes of Rosales' invocation of <u>Caperton v. A.T. Massey Coal Co.</u>, 556

27  U.S. 868, 885 (2009).  For the issue of bias, the facts of <u>Caperton</u> are nothing like the facts of this

28  case.

<u>Caperton</u> arose out of the West Virginia state courts.  A jury awarded Caperton and co-plaintiffs $50 million in damages.  The trial court denied Massey's motion for a new trial.  Massey appealed.

In West Virginia judges are democratically elected.  An election for a seat on the West Virginia Supreme Court of Appeals was scheduled for a time before that court could consider Massey's appeal.  The principal officer of Massey personally donated the legal maximum to the challenger, Benjamin, and he also raised in total $3 million for other organizations to support Benjamin and oppose the incumbent, Justice McGraw.  Benjamin won the election and became a Justice of the West Virginia Supreme Court of Appeals.  Justice Benjamin declined to recuse himself from Massey's appeal.  Massey prevailed on the appeal, 3-2.  Caperton sought rehearing.  Caperton sought recusal of Justice Benjamin and one other justice.  Massey sought recusal of a third justice.  The other two justices recused themselves.  Justice Benjamin did not.  On rehearing, the West Virginia Supreme Court of Appeals, with two judges sitting by designation, affirmed its earlier decision.

The Supreme Court of the United States granted Caperton's petition for a writ of certiorari.  It determined that Justice Benjamin's decision not to recuse himself created an intolerable probability of actual bias that violated the Due Process Clause of the Fourteenth Amendment.  The Court held, "We conclude that there is a serious risk of actual bias—based on objective and reasonable perceptions—when a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent."  <u>Caperton</u>, 556 U.S. at 884.

Rosales' case is nothing like <u>Caperton</u>.  The grand jury indicted Rosales on April 20, 2005.  Ex. 19 (ECF No. 16-19).  Rosales' case was assigned to Judge Steven R. Kosach no later than May 6, 2005.  <u>See</u> Ex. 23 (ECF No. 16-23) (transcript of arraignment).  Gammick endorsed Judge Flanagan in the 2006 general election.  Rosales pleaded guilty before Judge Kosach on July 20, 2007, more than 8 months after the general election. Ex. 37 (ECF No. 17-11).  Rosales appealed.  On March 4, 2009, the Nevada Supreme Court determined that Judge Kosach had improperly

1    participated in the plea negotiations between Rosales and the prosecution; the Nevada Supreme

2    Court reversed the judgment of conviction and remanded for the case to be assigned to a different

3    state district judge. Ex. 52 (ECF No. 17-26). The Clerk of the Second Judicial District Court

4    randomly assigned the case to Judge Flanagan on April 8, 2009. Ex. 55 (ECF No. 17-29). Judge

5    Flanagan accepted the assignment the same day. Ex. 56 (ECF No. 18) (filing date one day later

6    than signature date). All this occurred more than two years after the 2006 general election.

7    Unlike Caperton, in which Massey's primary officer donated to the campaign of a candidate, and

8    funded separate campaigns in support of that candidate, to a court which would hear Massey's

9    appeal after the election, Gammick had no way of knowing at the time of the 2006 general

10    election that Judge Flanagan would preside over Rosales' case after a guilty plea before Judge

11    Kosach, a reversal and remand by the Nevada Supreme Court, and a random assignment to Judge

12    Flanagan. Caperton is inapplicable to Rosales' case.

13          Second, in the underlying ground 1 is an argument that the prosecution and the judge

14    failed to disclose Gammick's endorsement of Judge Flanagan. As respondents correctly note,

15    Gammick's endorsement of Judge Flanagan was widely known, at the very least among the

16    Washoe County legal community. ECF No. 71 at 6 (citing ECF No. 54 at 19). This was not

17    something that anyone was hiding. The whole point of an endorsement of a candidate in an

18    election is to make it as widely known as possible, to persuade people to vote for that candidate.

19    An endorsement kept secret is no endorsement at all.

20          Third, the court agrees with respondents that trial counsel had sound reasons not to seek

21    recusal of Judge Flanagan. Even if trial counsel did raise the issue, and even if Judge Flanagan

22    did recuse himself, that success would not have resulted in the dismissal of charges against

23    Rosales.[2] It only would have resulted in a trial before a different judge.

24          Rosales has taken Gammick's endorsement of Judge Flanagan out of context. It is true

25    that Gammick, the Washoe County District Attorney at the time, endorsed Judge Flanagan. Ex.

26

---

27    [2] Rosales might have had that unreasonable belief. In one of his letters to post-conviction counsel Janet Bessemer, Rosales seemed to think that the reversal and remand of his guilty plea should have resulted in a sentence for time already served, not a trial. Ex. 159 (ECF No. 39-2 at 3). See also Ex. 160 (ECF No. 39-3 at 2-3) (letter from

28    Bessemer to Rosales).

155, 156 (ECF No. 19-42, 19-43).  However, among other endorsees were Dorothy Nash Holmes, former Washoe County District Attorney, Jeremy Bosler, the Washoe County Public Defender at the time, and Michael Specchio, former Washoe County Public Defender.  Id.  Judge Flanagan's career included time as the Chief Deputy Washoe County Public Defender and time as an Assistant Federal Public Defender.  The court agrees with respondents that trial counsel reasonably could have concluded that Judge Flanagan was a fair-minded judge.

For all these reasons, the court concludes that ground 2[a], that trial counsel provided ineffective assistance by not seeking Judge Flanagan's recusal, is insubstantial.  Rosales thus has not demonstrated cause and prejudice to excuse the procedural default of ground 2[a], and the court dismisses it.

### 3.      The court dismisses ground 1

Ground 1 is the substantive claim underlying grounds 2[a] and 2[b], that Judge Flanagan had an intolerable probability of actual bias due to Gammick's endorsement of him.  Rosales' arguments to excuse the procedural default of ground 1 were that trial counsel and appellate counsel provided ineffective assistance by not raising the issue in the trial court or on appeal, respectively.  The court has determined that Rosales could not overcome the procedural defaults of grounds 2[a] and 2[b], and thus those grounds cannot be cause and prejudice to overcome the procedural default of ground 1.  Carpenter, 529 U.S. at 453.

Additionally, even if ground 2[a] were not procedurally defaulted, it could not provide cause and prejudice to excuse the procedural default of ground 1.  The claim that Judge Flanagan had an intolerable probability of actual bias is a claim that Rosales could have raised on direct appeal even if he did not raise the issue in the trial court.  The Nevada Supreme Court likely would have conducted a plain-error analysis, but it would have ruled on the merits of the claim.  Consequently, the lack of a recusal motion by trial counsel could not have been the cause of the procedural default of ground 1.  Appellate counsel's not raising the bias issue on direct appeal is the cause of the procedural default of ground 1.  As the court has discussed above with respect to ground 2[b], the claim of ineffective assistance of appellate counsel is procedurally defaulted, and

Rosales has no applicable argument for cause and prejudice to excuse that procedural default. Consequently, there is no way that the procedural default of ground 1 can be excused.

For these reasons, the court dismisses ground 1.

**B.      Ground 3**

Ground 3 concerns the way Rosales was prosecuted.  Because Gammick was alleged to be the victim of one of the offenses, the Washoe County District Attorney's Office recused itself due to the conflict of interest.  Tom Barb was the special prosecutor for Rosales' trial.  Rosales alleges that Barb had a similar conflict of interest because Barb had worked for Gammick at the Washoe County District Attorney's Office while the offenses occurred, he used office space at the Washoe County District Attorney's Office, and he used an investigator employed by the Washoe County District Attorney's Office.  In ground 3(a), Rosales alleges that trial counsel failed to see his efforts to disqualify Barb through to completion.  Trial counsel filed a motion to disqualify Barb, the trial court held a hearing on the matter, the trial court denied the motion, but trial counsel failed to file a petition for a writ of mandamus with the Nevada Supreme Court that raised the same issue.  In ground 3(b), Rosales alleges that appellate counsel did not raise the issue at all on direct appeal.  Both claims are procedurally defaulted.

**1.      The court dismisses ground 3(b)**

Rosales' only argument to excuse the procedural default of ground 3(b) is the ineffective assistance of post-conviction counsel, under <u>Martinez</u>, but <u>Martinez</u> does not apply to procedurally defaulted claims of ineffective assistance of appellate counsel such as ground 3(b). <u>Davila v. Davis</u>, 137 S. Ct. 2058 (2017).  Rosales recognizes this and wishes to keep the issue preserved for further review.  ECF No. 63 at 11 n.2.  The court dismisses ground 3(b).

**2.      The court dismisses ground 3(a)**

Ground 3(a) is the claim that trial counsel failed to litigate the issue of the special prosecutor's conflict of interest to its completion.  Trial counsel filed a motion for disqualification of the special prosecutor.  Ex. 70 (ECF No. 18-14).  The trial court held a hearing on the motion, at which both trial counsel and the special prosecutor argued the motion.  Ex. 73 (ECF No. 18-17).  The trial court then issued a reasoned order denying the motion for disqualification.  Ex. 74

1    (ECF No. 18-18).  Rosales claims that trial counsel provided ineffective assistance by not then

2    filing a petition for a writ of mandamus with the Nevada Supreme Court.

3         In Nevada, mandamus is the appropriate method to challenge an attorney-disqualification

4    ruling.  See generally Collier v. Legakes, 646 P.2d 1219 (Nev. 1982), overruled on other grounds

5    by State v. Eighth Jud. Dist. Ct. (Zogheib), 321 P.3d 882 (Nev. 2014).[3]  "The disqualification of a

6    prosecutor's office rests with the sound discretion of the district court."  Collier, 646 P.2d at 1220.

7    "[W]hile mandamus lies to enforce ministerial acts or duties and to require the exercise of

8    discretion, it will not serve to control the proper exercise of that discretion or to substitute the

9    judgment of this court for that of the lower tribunal."  Id. at 1221 (citation omitted).  "Mandamus

10   will not lie to control discretionary action, unless discretion is manifestly abused or is exercised

11   arbitrarily or capriciously."  Round Hill General Imp. Dist. v. Newman, 637 P.2d 534, 603-04

12   (Nev. 1981).

13        Respondents argue that Martinez should not apply because it is an extraordinary form of

14   discretionary relief that a person seeks in the Nevada Supreme Court, not the trial court.  Then,

15   respondents argue, Martinez is limited to procedurally defaulted claims of ineffective assistance

16   of trial counsel, i.e. at the level of the trial court.  ECF No. 71 at 12.  There is a similarity between

17   a petition for a writ of mandamus filed with the Nevada Supreme Court and a direct appeal; both

18   are seeking higher-court review of a trial court decision, and if Martinez does not apply to

19   counsel's actions or inactions on direct appeal, then it would appear that Martinez should not

20   apply to counsel's actions or inactions in a petition for a writ of mandamus.  On the other hand, a

21   petition for a writ of mandamus regarding an attorney-disqualification ruling occurs in the middle

22   of trial-court proceedings.  Despite respondents' argument that mandamus is available only if a

23   petitioner does not have a plain, speedy, and adequate remedy under normal appellate procedures,

24   it appears that the Nevada Supreme Court has accepted that mandamus is necessary for attorney-

25   disqualification errors.  Respondents' argument that Martinez is inapplicable in mandamus

26   proceedings would lead to a confusing Martinez-on, Martinez-off, Martinez-on approach in the

27

28   [3] Zogheib overruled Collier's standard for when a prosecutor's office should be disqualified, and replaced that
     standard with a more demanding standard.  However, the standard is not at issue in this case.

1   middle of a single criminal case.  The court has not found any other decisions regarding whether

2   Martinez applies to mandamus proceedings in the middle of a criminal case.

3       The court will not decide this issue because the court concludes that the procedurally

4   defaulted claim of ineffective assistance of trial counsel itself is insubstantial.  A comparison with

5   Collier supports this conclusion.  Collier was a consolidated decision involving three separate

6   petitions for writs of mandamus following on district-court rulings that granted or denied motions

7   for disqualification of the Clark County District Attorney's Office.  The Nevada Supreme Court

8   denied the petitions with respect to the two cases in which the district judges denied the motions

9   to disqualify.  In those cases, the district judges considered the briefs of the parties, held hearings,

10  and issued decisions.  646 P.2d at 1221.  The Nevada Supreme Court granted the petition with

11  respect to the one case in which the district judge granted the motion to disqualify.  In that case,

12  the district judge granted the motion without a hearing and without hearing an argument from the

13  district attorney.  The Nevada Supreme Court held that the district judge needed to hold a hearing

14  on the motion, to consider all the relevant facts, and then to determine whether the district

15  attorney's office could carry out its prosecutorial function.  Id.  In Rosales' case, the trial court

16  considered the briefs of the parties, held a hearing at which the parties argued at length, and then

17  issued a reasoned decision.  Trial counsel reasonably could have concluded that the judge did not

18  act arbitrarily or capriciously and that a petition for a writ of mandamus would have been

19  meritless.  Consequently, ground 3(a) does not present a substantial claim of ineffective

20  assistance of trial counsel, and the court dismisses it.

21      **C.      The court dismisses ground 4**

22      Ground 4 is a claim that trial counsel should have moved for a change of venue because of

23  the pre-trial publicity surrounding this case.  The claim is procedurally defaulted.  Rosales argues

24  that the ineffective assistance of post-conviction counsel provides cause and prejudice to excuse

25  the procedural default.  The court finds that the underlying claim is insubstantial.

26      In Nevada, a change in venue may occur only after voir dire examination.  "An

27  application for removal of a criminal action shall not be granted by the court until after the voir

28  dire examination has been conducted and it is apparent to the court that the selection of a fair and

impartial jury cannot be had in the county where the indictment, information or complaint is pending." Nev. Rev. Stat. § 174.455(2).

The court reporter did not transcribe the voir dire examination. ECF No. 54 at 28. The court agrees with respondents. Rosales has the burden of demonstrating that he can overcome the default of ground 4. If Rosales can overcome the default of ground 4, then he has the burden of proving that he is entitled to relief on ground 4. He cannot ask the court to presume prejudice based upon a missing record. If Rosales wanted to demonstrate prejudice and then to prove that relief was warranted, then he needed to do more than simply state that the voir dire examination was not transcribed. He needed to file a motion asking for a determination whether it still was possible to transcribe the voir dire examination and then to ask the court to order respondents to produce that transcript. He did not. Rosales even filed a motion for leave to conduct discovery, which the court discusses below, but that motion contains no request for a determination whether a transcript of the voir dire examination can be produced. ECF No. 64. Without that transcript, Rosales cannot demonstrate that ground 4 is substantial. The court thus dismisses ground 4.

### D.      Ground 6

In ground 6, Rosales claims that original plea counsel should have filed a motion to suppress evidence on the basis that police had unlawfully entered his mother's apartment. Rosales alleges that plea counsel did file a motion to suppress, but on a different, weaker issue. Rosales also claims that, after reversal of his guilty plea and remand, trial counsel should have litigated the issue anew. Respondents argue that the part of ground 6 relating to plea counsel is moot because the Nevada Supreme Court reversed that plea and then new counsel represented Rosales for his trial. The court agrees with petitioner that this is a matter better left for a determination on the merits.

### E.      The court denies the motion for leave to conduct discovery

Rosales asks for leave to depose Gammick regarding the circumstances of his endorsement of Judge Flanagan. ECF No. 64. Rosales asks for this in support of grounds 1 and 2. However, the court is dismissing grounds 1 and 2 as procedurally defaulted. No reason remains to conduct discovery, and the court denies the motion for leave to conduct discovery.

11

1

      **F.**       **Motion for extension of time**

2

      Rosales had filed an unopposed motion for extension of time.  ECF No. 72.  The court

3

grants this motion.

4

**V.**      **Conclusion**

5

      IT THEREFORE IS ORDERED that respondents' motion to dismiss (ECF No. 60) is

6

**GRANTED** in part.  Grounds 1, 2, 3, and 4 are **DISMISSED** from this action because they are

7

procedurally defaulted.  In all other respects, respondents motion to dismiss (ECF No. 60) is

8

**DENIED** in part.

9

      IT FURTHER IS ORDERED that petitioner's motion for leave to conduct discovery (ECF

10

No. 64) is **DENIED**.

11

      IT FURTHER IS ORDERED that petitioner's unopposed motion for extension of time

12

(ECF No. 72) is **GRANTED**.

13

      IT FURTHER IS ORDERED that respondents will have 60 days from the date of entry of

14

this order to file and serve an answer, which must comply with Rule 5 of the Rules Governing

15

Section 2254 Cases in the United States District Courts.  Petitioner will have 30 days from the

16

date on which the answer is served to file a reply.

17

      DATED:  March 2, 2022.

18

19

                              ROBERT C. JONES
                              United States District Judge

20

21

22

23

24

25

26

27

28